UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JEFFREY K. THURMAN                          CIVIL ACTION NO. 3:14-cv-1099
     LA. DOC # 307604
                                            SECTION P

VERSUS                                      JUDGE S. MAURICE HICKS

WARDEN NATHAN BURL CAIN                     MAGISTRATE JUDGE HAYES

<u>REPORT AND RECOMMENDATION</u>

*Pro se* Petitioner Jeffrey K. Thurman, a prisoner in the custody of Louisiana's

Department of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28

U.S.C. § 2254 on June 4, 2014.  [doc. # 1].  Petitioner attacks his convictions for distribution of

cocaine, his subsequent adjudication as a third felony offender, and the six concurrent hard labor

sentences imposed by the Third Judicial District Court, Lincoln Parish.  This matter has been

referred to the undersigned for review, report, and recommendation in accordance with the

provisions of 28 U.S.C. § 636 and the standing orders of the Court.

<u>Background</u>

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> The Ruston Police Department and the Lincoln Parish Narcotics Enforcement Team
> (LPNET) received information from a reliable confidential informant, Donald Fields,
> that the defendant was selling cocaine. Mr. Fields had known the defendant since
> 2000, and had talked with the defendant around Easter in 2008 about buying drugs.
> On May 28, 2008, Mr. Fields and Lieutenant Michael Lestage of the Ruston Police
> Department and the LPNET began an investigation into the defendant's drug
> activities. Mr. Fields contacted the defendant and discussed purchasing cocaine. Mr.
> Fields went to the LPNET office where his vehicle and person were searched to
> insure that Mr. Fields was not in possession of any drugs. Mr. Fields was given $100
> in "buy money." The money was photocopied to record the serial numbers. Mr.
> Fields was fitted with audio-video recording equipment. Mr. Fields drove his vehicle
> to a prearranged location to meet the defendant. Law enforcement officials followed
> him. Mr. Fields met the defendant and bought cocaine from him for $100.

Mr. Fields returned to the LPNET office where he handed over the cocaine along with the audio-video equipment. The cocaine was checked in as evidence and eventually transferred to the North Louisiana Crime Lab ("Crime Lab") where it was tested and determined to be cocaine. The recording from the audio-video equipment was transferred to a computer and put on a DVD. The defendant was not arrested at that point. According to Lieutenant Lestage, law enforcement officials wanted to show that this was not happenstance for the defendant, but something that he did on a regular basis. Mr. Fields contacted the defendant and made cocaine purchases on five more occasions.

On June 5, 2008, Mr. Fields went to the LPNET office, his vehicle and person were searched, he was fitted with audio-video equipment and he was given $100 in buy money. He made contact with the defendant, who told Mr. Fields to meet him at "Elzie's house." He was then directed to another location. Mr. Fields met the defendant at the designated location and followed him to a vacant lot. Mr. Fields purchased $100 worth of cocaine from the defendant. Mr. Fields returned to the LPNET office and handed over the audio-video equipment and the cocaine. The cocaine was placed into evidence. The contraband was transferred to the Crime Lab where it was tested and determined to be cocaine.

On June 10, 2008, the same procedure was followed where law enforcement officials searched Mr. Fields and his vehicle, gave him $100 in buy money, and equipped him with audio-video equipment. Mr. Fields went to Elzie's house and called the defendant to tell him he was in the area and was ready to make a drug buy. Elzie appeared and said he would take the money to the defendant and bring back the cocaine. Mr. Fields called the defendant and told him that he did not want any complications. The defendant assured Mr. Fields that there would not be any problems. Mr. Fields watched Elzie walk down the street to the defendant's house and then return with the cocaine. Mr. Fields turned the audio-video equipment over to the police along with the cocaine which was processed as evidence and transferred to the Crime Lab where it was tested and determined to be cocaine.

On June 12, 2008, Mr. Fields went to the LPNET office and followed the same procedure used in the past. He was given $100 in buy money and called the defendant to make a drug purchase. Mr. Fields told the defendant to come to Elzie's house. The defendant stated that he was around the corner. However, when Mr. Fields arrived, a young man walked up to his vehicle. Mr. Fields asked where the defendant was and the man replied, "I have it. I've got it." Mr. Fields paid the man the $100 and received cocaine. The cocaine was turned over to law enforcement officers, tested by the Crime Lab, and determined to be cocaine.

Lieutenant Lestage did not participate in the last two instances in which Mr. Fields bought drugs from the defendant. Lieutenant Chris Bittick, who had previously aided Lieutenant Lestage, was in charge of the last two drug buys. The focus of the

investigation was Miketavious Brooks, not the defendant. Mr. Fields had furnished information to law enforcement officials that this individual was selling drugs.

Mr. Fields went to the LPNET office on August 5, 2008. His person and vehicle were searched, he was equipped with audio-video equipment, and he was given $80 in buy money. Mr. Fields telephoned Mr. Brooks from a convenience store and was told to come to Elzie's house and then to proceed to the end of a certain dead-end street if no one was at Elzie's. Mr. Fields followed the instructions and saw several men under a tree. Mr. Brooks did not appear, but the defendant came up to him and sold him $80 in cocaine. Mr. Fields was not able to get the defendant on the video recording because the transaction occurred so quickly. The cocaine was turned over to Lieutenant Bittick and eventually transferred to the Crime Lab where it was tested and determined to be cocaine.

On August 7, 2008, Mr. Fields again worked with Lieutenant Bittick with the goal of making a drug buy from Mr. Brooks. The same procedure was followed and Mr. Fields was given $80 in buy money. Mr. Fields contacted Mr. Brooks about buying drugs and went to the location directed by Mr. Brooks. Mr. Brooks did not appear, but the defendant arrived as a passenger in a car driven by an unknown female. Mr. Fields purchased $80 in cocaine from the defendant. He gave the cocaine to Lieutenant Bittick, who transferred it to the Crime Lab where it was tested and determined to be cocaine.

On November 20, 2008, the defendant was charged by bill of information with six counts of distribution of a controlled dangerous substance, cocaine. The defendant was tried by jury. The prosecution presented the testimony of Lieutenant Lestage, Lieutenant Bittick, and Donald Fields. The audio-video recordings of the drug buys were played for the jury. The defendant called Mr. Fields to testify. According to Mr. Fields, he was introduced to the defendant by Iva Jean Caldwell several years before the incidents forming the basis of this case. Iva Jean Caldwell testified; she denied introducing Mr. Fields to the defendant and said that Mr. Fields had a reputation in the community for not being truthful. The defendant also called Terry Stanley as a witness. He testified that Mr. Fields had a reputation for not telling the truth. The defendant was found guilty of all six counts.

In July 2009, the defendant was charged by bill of information with being a third felony offender. The prosecution alleged that the defendant had pled guilty to two counts of possession of cocaine in October 1999 and had entered a guilty plea to possession of cocaine and attempted possession of a firearm by a convicted felon in November 2005. The state requested that the defendant be sentenced as a third felony offender for all six counts of distribution of cocaine. A habitual offender hearing was held on March 9, 2010. The defendant was adjudicated a third felony offender on all counts. The defendant filed motions for new trial and for post verdict judgment of acquittal, which were denied by the trial court.

The defendant appeared before the court for sentencing on July 14, 2010. The trial court observed that, although the defendant had been adjudicated a third felony offender, he had previously been convicted of five felonies. The defendant had three convictions for distribution of cocaine that occurred outside the 10–year cleansing period of La. R.S. 15:529.1(C). The court concluded that the defendant had made his living by distributing drugs. According to the court, there was an undue risk of the defendant committing another crime, the defendant was in need of correctional treatment or a custodial environment best provided by commitment to an institution, and a lesser sentence would deprecate the seriousness of the offense. As an aggravating factor, the trial court considered that the defendant obtained substantial income and resources from ongoing drug activities. The court noted that, based upon the defendant's adjudication as a third felony offender, the range for sentencing on each of the six counts of distribution of cocaine for which he had been convicted was 20 years to 60 years at hard labor. The trial court sentenced the defendant to serve 45 years at hard labor, without benefit of parole, probation, or suspension of sentence for each of the six counts of distribution of cocaine for which he was convicted, with the sentences to be served concurrently. The defendant made an oral motion to reconsider the sentences which was denied by the trial court.

*State v. Thurman*, 71 So. 3d 468, 469-71 (La. App. 2 Cir. 2011).  The appellate court affirmed Petitioner's convictions and sentences on June 22, 2011.[1]  *Id.* at 474.  The Louisiana Supreme Court denied Petitioner's subsequent application for writ of certiorari on February 3, 2012.  *State v. Thurman*, 79 So. 3d 1025 (La. 2012).  Petitioner did not seek further direct review before the United States Supreme Court.

Petitioner filed an initial *pro se* application for post-conviction relief in the trial court on October 11, 2012,  [doc. # 17-1, p. 2], and a supplemental application on January 29, 2013.  [doc. # 17-1, p. 47].  The trial court denied relief on January 23, 2013, and June 10, 2013, respectively.  [doc. #s 15-1, p. 45; 17-1, p. 57].  The Second Circuit Court of Appeal denied Petitioner's application for supervisory review on May 31, 2013.  [doc. # 17-1, p. 46].  The Louisiana Supreme Court, on January 17, 2014, likewise denied Petitioner's application.  *Id.* at 127.

---

[1] The court did, however, amend Petitioner's sentences pursuant to LA. REV. STAT. § 40:967(B)(4)(b) "to provide that only the first two years of the sentences are to be served without benefit of parole." *Thurman*, 71 So. 3d at 474.

4

Petitioner filed the instant Petition on June 4, 2014.  [doc. # 1].  He raises the following assignments of error: (1) the trial court imposed excessive sentences; (2) the trial court imposed indeterminate sentences; (3) insufficient evidence; (4) the State knowingly utilized false and perjured testimony; (5) the trial court prevented defense counsel from effectively cross-examining the State's key witness; and (6) ineffective assistance of counsel.  *Id.*  The matter is now before the Court.

## Law and Analysis

### I.       Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.  After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id.* at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case."  *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## II.   Petitioner's Claims

A. Claims Three, Four, and Five

Petitioner claims that the evidence presented at trial was insufficient to sustain his convictions (Claim Three), that the State knowingly utilized false and perjured testimony (Claim Four), and that the trial court prevented his counsel from effectively cross-examining a key witness (Claim Five).  [doc. # 1-2, p. 27].  Citing LA. C. CRIM. P. art. 930.4, the trial court, on collateral review, held that Petitioner was precluded from asserting these claims because he failed to raise them on direct appeal.[2]  [doc. # 15-1, p. 43-44].  The court undoubtedly relied on LA. C. CRIM. P. art. 930.4(C), which provides, "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief."

Generally, a federal court will not review a claim decided by a state court if the decision

_____

[2] The trial court, in the alternative, denied Claim Four on the merits.  [doc. # 15-1, p. 44].

of that state court rests on a state ground that is both independent of the federal claim and is adequate to support that judgment.  *See Glover v. Cain*, 128 F.3d 900, 902 (5ᵗʰ Cir. 1997).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or *habeas* review.  *Amos v. Scott*, 61 F.3d 333, 388 (5ᵗʰ Cir. 1995).

Procedural default does not bar review of a federal claim raised in a *habeas* petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is "independent" of federal law and rests on a state procedural bar. *Glover*, 128 F.3d at 902.  A state court expressly bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Id.*

With that in mind, Article 930.4(C) is clearly an independent and adequate state procedural ground.  *See Parks v. Cain*, 2014 WL 505329, at *8 (E.D. La. Feb. 6, 2014) (listing multiple occasions on which the court held that Article 930.4(C) is an independent and adequate ground for dismissal)*; Jones v. Warden Louisiana State Penitentiary*, 2010 WL 817311, at *18 (W.D. La. Jan. 13, 2010) (citing *Bell v. Cain*, 2002 WL 31002831, at *4 (E.D. La. Aug. 29, 2002) (reviewing six state cases that referenced Article 930.4(C) and observing that five of the six applied the procedural bar)).

Here, the state *habeas* court issued the last reasoned opinion on these claims and, to reiterate, denied relief because Petitioner failed to raise them on appeal.  Accordingly, it appears that Petitioner's claims are immune from federal review.

A petitioner may, however, be excepted from the procedural default rule if he can show

cause for his default and "prejudice attributed thereto," or if he can demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902.  To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The mere fact that a petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or objection despite recognizing it, does not constitute cause.  *Id.* at 486.

Here, considering Petitioner's insufficient evidence claim and his claim that the trial court prevented defense counsel from effectively cross-examining a key witness (Claims Three and Five, respectively), Petitioner has not offered any cause for the default that would excuse the procedural bar imposed by the Louisiana courts, nor does this Court's review of the record support a finding that any factor external to the defense prevented Petitioner from raising these claims on direct appeal.

Petitioner does offer cause for his default of Claim Four; however, he fails to support his offering with sufficient evidence.  In this claim, Petitioner argues that "the State's key witness and confidential informant, Donald Fields, testified that he had not received any favorable treatment from the State in exchange for his testimony . . . ."  [doc. # 1-2, p. 40].  According to Petitioner, "This was perjured testimony, as [Fields'] drug charges were dismissed by the State within weeks after his testimony . . . ."  *Id.*  Petitioner adds, "Fields had been given a sweet deal in exchange for his testimony against Petitioner."  *Id.* at 47.  With respect to the procedural bar at issue, Petitioner argues that he could not have raised the claim on appeal because, at the time, he was unaware of the factual basis underlying the claim.  [doc. # 33, p. 5].

A "showing that the factual or legal basis for a claim was not reasonably available" can

constitute an objective factor external to the defense that impeded a petitioner's efforts to comply with a state's procedural rule.  *Graves v. Cockrell*, 351 F.3d 143, 154 (5th Cir. 2003) (internal quotation marks and citation omitted).  Here, if Petitioner learned of the dismissed charges against Fields only after appealing to the Second Circuit, he could demonstrate cause for his procedural default.  *See U.S. v. Alanis*, 88 Fed. App'x 15, 22 (5th Cir. 2004) (stating that if the evidence detailing false trial testimony was not available to the petitioner until after his appeal, "this would establish cause for his failure to raise this claim earlier.").

That said, Petitioner fails to present any evidence indicating that there were charges against Fields, that the State dropped charges against Fields, that the State agreed to drop charges against Fields in exchange for Fields' testimony against Petitioner,[3] or, more importantly when Petitioner discovered Fields' clandestine deal.  *See Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987) (observing that a *habeas* petitioner has the burden of proving facts to support his claim).  Instead, he baldy states that evidence of the deal "was provided to [him] many months after his conviction and subsequent direct appeal."  [doc. # 33, p. 11 (emphasis removed)].  The Court cannot conclude, from Petitioner's speculation and insinuation, that Petitioner has demonstrated cause sufficient to excuse his procedural default.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  *Hogue v. Johnson*, 131 F.3d 466,

---

[3] In fact, the trial court remarked, on collateral review, that Petitioner failed to demonstrate that any charges against Fields were not dropped for reasons other than his testimony against Petitioner: "Petitioner does not show nor even allege that the charges dismissed [against Fields] were not dismissed based on insufficiency of the evidence, or alibi statements, etc."  [doc. # 15-1, p. 44].  The court added, "the State may choose to dismiss part or all charges against a defendant based on the facts" and "[t]he State also has an ethical obligation to dismiss any charges for which no foundation exists."  *Id.*

9

497 (5th Cir. 1997).  Having failed to show an objective cause for his default on these three

claims, the Court does not need to determine whether prejudice exists.

Thus, Petitioner's claims are procedurally barred from review absent a showing that a

fundamental miscarriage of justice will occur if the merits of the claims are not reviewed.

*Hogue*, 131 F.3d at 497.  To establish a fundamental miscarriage of justice, Petitioner must

provide the Court with evidence that would support a "colorable showing of factual innocence."

*Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).  To satisfy this standard, Petitioner must show

that "but for constitutional error, no reasonable fact-finder would have found the applicant guilty

of the underlying offense."  *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Petitioner fails to present evidence or argument sufficient to demonstrate that a

fundamental miscarriage of justice will occur if his claims are not reviewed.  Accordingly, as he

has failed to overcome the state procedural bar, these claims should be **DISMISSED**.

B. Claim One: Excessive Sentences

Next, Petitioner claims that the trial court imposed excessive sentences.  [doc. # 1-2, p.

20].  The Court, however, cannot consider this claim because Petitioner failed to properly present

it to the state courts for review prior to filing the instant Petition.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted unless it appears that the applicant has

exhausted the remedies available in the courts of the State . . . ."  28 U.S.C. § 2254(b)(1)(A).

The Fifth Circuit explained exhaustion as follows:

> The exhaustion requirement is satisfied when the substance of the federal claim is
> fairly presented to the highest state court on direct appeal or in state post-conviction
> proceedings, even if the state court fails to address the federal claim, or, if the federal
> claim is not fairly presented but the state court addresses it *sua sponte*. A claim is
> fairly presented when the petitioner asserts the claim in terms so particular as to call

> to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation.[4] It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. Rather, the petitioner must afford the state court a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.

*Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (internal quotations marks and citations omitted). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This means that a petitioner must present his claims to each appropriate state court. *Baldwin*, 541 U.S. at 29.

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.*

Here, it is clear from a review of the state court record that Petitioner did not present this claim to the Louisiana Supreme Court on direct appeal or on collateral review. [*See* doc. # 17-1, p. 59, 87]. As Petitioner has yet to invoke one complete round of the State's established appellate review process, this claim should be dismissed.

Moreover, if Petitioner were to assert this unexhausted claim before the state courts in a second application for post-conviction relief, the state courts would reject the application as procedurally barred in reliance on LA. CODE CRIM. PROC. ANN. art. 930.4(E), which states that a "successive application shall be dismissed if it raises a new or different claim that was

---

[4] A petitioner does not "fairly present" a claim to a state court if that court must read either a brief before a lower court or a lower court's opinion to locate the claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

inexcusably omitted from a prior application," or in reliance on Article 930.8(A), which states

that "[n]o application for post-conviction relief . . . shall be considered if it is filed more than two

years after the judgment of conviction and sentence has become final . . . ."  Nor could Petitioner

now seek review before the Louisiana Supreme Court on direct appeal.  *See* SUPREME COURT

RULE X, § 5(a) ("An application seeking to review a judgment of the court of appeal . . . after a

denial of an application, shall be made within thirty days of the mailing of the notice of the

original judgment of the court of appeal.").

Thus, Petitioner's claim is procedurally defaulted and the Court, by extension, is barred

from undertaking review.  *See Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999)

("Procedural default exists where . . . the petitioner fails to exhaust all available state remedies,

and the state court to which he would be required to petition would now find the claims

procedurally barred."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).[5]

As indicated above, a petitioner may be excepted from the procedural default rule if he

can show "cause" for his default and "prejudice attributed thereto," or if he can demonstrate that

the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage

of justice."  *Glover,* 128 F.3d at 902.  Here, Petitioner has not offered any cause for failing to

raise this claim in the state court proceedings, nor does this Court's review of the record reveal

any such cause.

Thus, Petitioner's claim is procedurally barred from review absent a showing that a

---

[5] Petitioner's claims are also considered "technically exhausted" because no state
remedies remain available.  *Coleman v. Thompson*, 501 U.S. 722, 731-33 (1991) (holding that a
"habeas petitioner who has defaulted his federal claims in state court meets the technical
requirements for exhaustion" because there are no state remedies available to him).  In this
scenario, "there is no substantial difference between nonexhaustion and procedural default."
*Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).

fundamental miscarriage of justice will occur if the merits of the claim are not reviewed.  *Hogue*,

131 F.3d at 497.  Aside from a conclusory assertion that he is "actually, factually innocent of the

crimes for which he has been convicted," Petitioner makes no argument in this respect.  [*See* doc.

# 33, p. 5].  Accordingly, Petitioner has failed to overcome the procedural bar to the claim at

issue.  This claim should be **DENIED**.

C. Claim Two: Indeterminate Sentences

       Petitioner claims that the trial court imposed indeterminate sentences in violation of the

Fourteenth Amendment.  [doc. # 1-2, p. 31].  He argues that, while the trial court ordered him to

serve concurrent, 45-year sentences at hard labor on each of the six charged counts, it "did not

delineate which of the six counts of distribution of cocaine was the subject of" the habitual

offender sentence enhancement.  [doc. # 1-2, p. 31].  He goes on, "If a court fails to . . . specify

which of the sentences is being enhanced under the statute, the sentence or sentences should be

set aside and remanded for re-sentencing."  *Id.*

       The Second Circuit Court of Appeal found Petitioner's argument lacking in merit:

> If a defendant who had been convicted of an offense is sentenced to imprisonment,
> the court shall impose a determinate sentence. La. C. Cr. P. art. 879. La. R.S.
> 15:529.1 exposes a person who has previously been convicted of a felony to
> enhanced penalties for any felony committed after the date of the prior felony
> conviction. There is no statutory bar to applying the habitual offender law in
> sentencing for more than one conviction obtained on the same date, whether the
> convictions result from separate felonies committed at separate times or arise out of
> a single criminal act or episode.  *State v. Shaw*, 2006-2467 (La.11/27/07), 969 So.2d
> 1233. *See also State v. Montgomery*, 44,877 (La.App.2d Cir.1/27/10), 31 So.3d 560;
> *writ denied*, 2010-0494 (La.9/24/10), 45 So.3d 1073.

> This case is distinguishable from *State v. Mayweather*, 28,271 (La.App.2d
> Cir.6/26/96), 677 So.2d 594, cited by the defendant.  In *Mayweather*, a defendant was
> found guilty of two counts of armed robbery, was adjudicated a habitual offender,
> and was given one sentence to serve 60 years at hard labor, without benefit of parole,
> probation, or suspension of sentence. The trial court did not specify whether the

> sentence was for either or both armed robbery counts. This court found that, under those circumstances, the sentence was indeterminate. In the present case, the state asked the trial court to enhance each of the defendant's six convictions for distribution of cocaine under the habitual offender statute. The trial court, in imposing sentence, clearly imposed the habitual offender enhancement to each of the six convictions. Therefore, the sentence in this case complied with La. C. Cr. P. art. 879.

*Thurman*, 71 So. 3d at 473.

Federal *habeas* courts must accord wide discretion to a state trial court's sentencing decision, and claims arising out of the decision are generally not constitutionally cognizable. *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir.1987) (citations omitted).  However, relief may be required if a petitioner can show that his sentence is either outside the statutory limits or wholly unauthorized by law.  *Id.* at 923-24.  If a sentence is within the statutory limits, as here, a petitioner must show "that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion' . . . or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Id.* at 924 (citations omitted).

Here, as the appellate court explained, Petitioner's enhanced sentences were entirely authorized under Louisiana law.  Petitioner fails to demonstrate that the trial judge's decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion.  Further, Petitioner fails to show that there was any error of law that resulted in the improper exercise of discretion and deprived Petitioner of his liberty.  The state court committed no constitutional sentencing error.  This claim should be **DENIED**.

D. Claim Six: Ineffective Assistance of Counsel

14

Petitioner claims that his counsel rendered ineffective assistance by failing to subpoena material witnesses and failing to strike several prospective jurors.  [doc. # 1-2, p. 55].  The trial court, on collateral review, denied both permutations of Petitioner's claim.[6]

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness prejudiced him.  *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Further, "mere conclusory allegations in support of a claim of ineffective

---

[6] The state court reached the merits of the claim, but it also—unquestionably relying on LA. C. CRIM. P. art. 930.4(C)—found that Petitioner's challenge was procedurally barred because he failed to raise it on direct appeal.  [doc. # 15-1, p. 44].  The State argues that, in light of that ruling, Petitioner's claim should be procedurally defaulted in the instant proceeding.  [doc. # 28-1, p. 10].  As above, a claim is only procedurally barred if the state court decision rests on a state ground that is strictly or regularly followed and evenhandedly applied to the majority of similar cases (i.e. "adequate").  LA. C. CRIM. P. art. 930.4(C), however, is not strictly or regularly followed and evenhandedly applied in the context of ineffective assistance of counsel claims.  Rather, as the Louisiana Supreme Court noted, "The appropriate avenue for asserting a claim for ineffective assistance of counsel is through postconviction relief, not by direct appeal."  *State v. Truitt*, 500 So. 2d 355, 359 (La. 1987).  For this reason, the Court will address the merits of Petitioner's claim.  *See Bell v. Cain*, 2002 WL 31002831, at *8 (E.D. La. Aug. 29, 2002) (holding that Article 930.4(C) is "not 'adequate' so as to render an *ineffective assistance of counsel claim* procedurally barred . . . .").

assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones*, 61 F.3d at n.5, and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *U.S. v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are

not in operation when the case involves review under the *Strickland* standard itself." *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.  To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

     i. Failure to Subpoena Witnesses

Petitioner first argues that counsel was ineffective for failing to subpoena Elzie Thomason, Miketavious Brooks, and Charles White to testify at trial.  [doc. # 1-2, p. 57].  He contends that at least one . . . would have testified that Petitioner was not the person who sold drugs to the State's C.I." *Id.*

Petitioner, however, merely objects to counsel's trial strategy.  Claims "of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Coleman v. Thaler*, 716 F.3d 895, 906 (5th Cir. 2013) (citation and internal quotation marks omitted).  "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a *habeas* court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Here, counsel was not ineffective for failing to call the three individuals named above. Not only does Petitioner fail to affirmatively demonstrate what the testimony would have been,

he also fails to show that the witnesses would have, in fact, testified at trial.[7]  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). This claim is without merit and should be **DENIED**.

ii. Failure to Challenge Prospective Jurors

Petitioner next claims that counsel was ineffective for failing to strike the following biased jurors: George H. Stone, Bonita C. Smith, Maggie F. Talbert, Frances P. Baker, Rebecca J. Bennett, Tamara S. Pisciotta, Jack V. Phillips, Robert H. Lewis, and Tara E. Jones.  [doc. # 1-2, p. 58-63].[8]

The Sixth Amendment guarantees criminal defendants the right to an impartial and indifferent jury.  *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992).[9]  "[T]he presence of a biased juror may require a new trial as a remedy."  *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009).  "A juror is biased if his 'views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  *Id.* (quoting *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000)).

There are two recognized variations of bias.  *Id.*  "Actual bias exists when the juror failed to answer a material question honestly on voir dire, and a correct response would have provided a valid basis for a challenge for cause."  *Id.*  "In the majority of situations, the party seeking a new

_____

[7] Petitioner asserts, without citation, that the "record contains affidavit(s) of individual(s) who were willing to testify in behalf of Petitioner."  [doc. # 1-2, p. 57].  The Court combed the records on file and did not uncover any affidavits from Petitioner's proposed witnesses.

[8] Of note, after conferring with Petitioner, counsel peremptorily struck prospective jurors Donald Albrecht and Stephen Colvin.  [doc. # 28-20, p. 33-35].

[9] "In any trial, there is initially a presumption of jury impartiality."  *U.S. v. O'Keefe*, 722 F.2d 1175, 1179 (5th Cir. 1983).

trial must demonstrate bias through admission or factual proof." *U.S. v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001). "There is also a narrow class of relationships described by Justice O'Connor's concurrence in *Smith v. Phillips*, and recognized by [the Fifth Circuit] on several occasions, for which a juror can be presumed biased." *Hatten*, 570 F.3d at 600 (citing *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003)).

In *Smith*, Justice O'Connor listed several extreme situations that would justify finding implied bias: "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith v. Phillips*, 455 U.S. 209, 948 (1982). Justice O'Connor's opinion is only illustrative. *See Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006) ("The implied bias doctrine neither starts [nor] ends with the Supreme Court's decision in *Smith v. Phillips*."). There is no definitive test; the inquiry is fact-specific. That said, in *Andrews v. Collins*, 21 F.3d 612, 620 (5th Cir. 1994), the Fifth Circuit emphasized that the Supreme Court "has not looked favorably upon attempts to impute bias to jurors," and that only "*extreme situations*" would justify such a finding. *See Solis*, 342 F.3d at 396 (noting that the Fifth Circuit recognizes the implied bias doctrine "with carefully watched limits.").

Here, Petitioner does not claim that any prospective juror evinced actual bias. Instead, he tacitly claims that the jurors were impliedly biased. At *voir dire*, prospective juror George Stone disclosed that his brother, Mike Stone, was the Lincoln Parish Sheriff.[10] [doc. # 28-18, p. 6, 49]. Juror Bonita Smith stated that she was the Lincoln Parish Sheriff's fourth cousin, that Cathy

---

[10] Mike Stone did not participate in the trial.

Frechette, a deputy clerk of court with the Lincoln Parish Clerk of Court, was her stepsister, and that her son-in-law was friends with Cary Brown, one of the prosecutors.  [doc. # 28-19, p. 11]. Juror Maggie Talbert communicated that she worked for the Bienville Parish Sheriff's Department.  [doc. # 28-20, p. 20].  Prospective juror Frances Baker stated that she retired from her position with the civil department of the Lincoln Parish Sheriff's Department five years ago. *Id.* at 28.

Further, juror Rebecca Bennett disclosed that she worked with one of the prosecutors, Steven Hearn, at Louisiana Tech University[11] and that she knew Jay Alexander, an officer with the Ruston Police Department.[12]  [doc. # 28-19, p. 25-26].  Juror Tamara Pisciotta testified that prosecutor Brown coached her daughter's softball team.  *Id.* at 49.  Juror Jack Phillips stated that he knew Sandy Freeman, a law enforcement officer, but that he had not spoken with him in about four years.[13]  *Id.* at 1.  Juror Robert Lewis testified that he knew some police officers, but that he did not "know them personally real well."  *Id.* at 21.  Finally, prospective juror Tara Jones disclosed that she knew the bailiff, John Holloway, who was employed with the Lincoln Parish Sheriff's Office.  *Id.* at 30.[14]

The prospective jurors' experiences and relationships are not equivalent to the extreme situations that Justice O'Connor listed in *Smith.*  Specifically, no juror was an employee of the

---

[11] Bennett testified that she taught management at the University and that Mr. Hearn taught business law.  [doc. # 28-19, p. 26].  She also testified that she did not see Mr. Hearn frequently because Mr. Hearn taught part-time and mostly at night.  *Id.*

[12] Jay Alexander did not participate in the trial.

[13] Sandy Freeman did not participate in the trial.

[14] Petitioner does not claim, and offers no evidence to suggest, that any of the *voire dire* testimony was false.

prosecuting agency, a close relative of one of the participants in the trial or the criminal transaction, a witness to the crime, or a participant in the crime.  Unlike in other cases where courts found implied bias when jurors deliberately failed to disclose information, all of the prospective jurors here voluntarily disclosed the information that Petitioner relies on in claiming bias.

The only prospective juror with a relationship that even remotely approximated one of the extreme situations outlined in *Smith* is George Stone.  In *U.S. v. Scott*, 854 F.2d 697, 698 (5th Cir. 1988), the Fifth Circuit found implied juror bias when it was discovered after trial that the jury foreman was the brother of a sheriff in the sheriff's office that performed some of the investigation in the case.  When counsel asked the jurors whether any were close relatives of law enforcement officials, the juror did not respond.  *Id.*  In reaching its decision, the Fifth Circuit underlined,  "A juror may not conceal material facts disqualifying him simply because he sincerely believes that he can be fair in spite of them."  *Id.* at 699.  The court further emphasized that the "record of the *voir dire* strongly suggests that [the juror] wanted to serve on the jury and feared that he would not be allowed to do so if he disclosed his brother's employment," and that he "consciously censored" the information at issue, believing that "it was his place, and not the place of the court or defense counsel, to determine whether his relations were a bar to jury service in this case."  *Id.*

Here, unlike in *Scott,* prospective juror Stone readily disclosed that his brother was the Lincoln Parish Sheriff.  [doc. # 28-18, p. 49].  Stone also stated that his relationship with his brother would not affect his decision with respect to Petitioner's guilt or innocence, that he could be fair, that he understood the presumption of innocence, and that he knew the State carried the

21

burden of proof.  This is not one of the rare circumstances in which a finding of implied juror

bias is warranted.  Stone's kinship, ultimately, does not "inherently create . . . a substantial

emotional involvement, adversely affecting [his] impartiality."  *See Solis*, 342 F.3d at 392;

*compare U.S. v. Bryant*, 991 F.2d 171, 174 (5th Cir. 1993) (holding that the defendant was not

entitled to have a juror, who responded that she could be fair and whose husband had been the

chief of police in a neighboring city for 21 years, excused for cause), *and Hogan v. Lee*, 2014

WL 272487, at * 7 (N.D. Miss. 2014) (trial counsel not ineffective for failing to strike jurors who

admitted connections to law enforcement and who averred that they could be impartial and

decide the case on its facts.), *with Biagas v. Valentine*, 265 Fed. App'x 166, 172 (5th Cir. 2008)

(counsel ineffective for failing to strike juror who worked for the local sheriff's office and who

stated, "I'm going to be partial.").

There is also no basis upon which to impute bias to the remaining prospective jurors.  In

*Wiley v. Grimmer*, 476 Fed. App'x 292, 293-94 (5th Cir. 2012), a petitioner claimed that his trial

attorney rendered ineffective assistance when he failed to strike a juror that worked for the local

sheriff's office.  At trial, the sheriff, as well as two deputies, testified against the petitioner.  The

court rejected the claim and held that, while the juror "did have some connection to the

prosecution," the juror was "entirely forthcoming" with his relationship to the sheriff.  The court

emphasized that the circumstances were "not analogous to cases in which jurors purposefully

concealed their close connection to law enforcement in order to serve on the jury."  *Id.* at 294.

Similarly, in *Green v. Quarterman*, 213 Fed. App'x 279 (5th Cir. 2007), a petitioner

claimed that his counsel was ineffective for failing to challenge six jurors who admitted that they

or their relatives had been victims of crimes comparable to one the petitioner was charged with.

The court denied the claim, noting that each juror disclosed his or her experiences and stated that "he or she could be impartial and decide the case on the facts."  *Id.* at 281.

Here, all prospective jurors disclosed their relatively remote connections to the case. Then, in response to Petitioner's counsel's questioning, all of the jurors testified that they could be fair, that they understood the presumption of innocence, and that they comprehended the burden of proof.[15]  [doc. #s 28-18, 28-19, 28-20].  None of the *voir dire* testimony indicates that the jurors' indirect relationships would have prevented or substantially impaired the performance of their duties as jurors.  The circumstances at issue are, therefore, beyond the "carefully watched limits" of the implied bias doctrine.  *See, e.g., U.S. v. Flores*, 63 F.3d 1342, 1357-58 (5th Cir. 1995) (trial court did not abuse its discretion in declining to excuse venire members who were acquainted with government witnesses or members of law enforcement).

As the jurors were not actually or impliedly biased, there was no reason for counsel to exclude the prospective jurors.  In other words, counsel did not render deficient performance. *See Wiley*, 476 Fed. App'x at 294 (citing *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006) (ruling that if a juror is not biased, counsel's failure to strike that juror does not support a claim for ineffective assistance)); *see also Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) ("The attorney's actions during voir dire are considered to be a matter of trial strategy."); *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989) (noting that jury selection inevitably requires intuition as it is "more an art than a science . . . .").

---

[15] In addition, all prospective jurors responded, "No, sir," when the trial judge asked them, "Is there any reason whatsoever–other than what you may have already disclosed, is there any reason whatsoever why you could not give both the defendant and the state a fair trial and decide this case based solely on the evidence that's been presented and in accordance with law?" [doc. # 28-18, p. 2-3].

Petitioner fails to demonstrate that the state *habeas* court's ruling was contrary to, or an unreasonable application of, clearly established federal law.  This claim should be **DENIED**.

### Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Jeffrey K. Thurman, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of

appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

      In Chambers, Monroe, Louisiana, this 11th day of May, 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE